TERESA M. MULLINS & a. v. TERESA M. O'BRIEN & a.

*Hughes & Burns* and *Walter A. Calderwood*, for the plaintiffs.

*Murchie & Murchie*, for the defendants.

*William H. Sleeper*, for Marion D. Brydia, Adm'x.

MARBLE, C. J.   Although errors were committed in the admission and exclusion of evidence, we are of the opinion that the course of the trial rendered these errors harmless.

The law applicable to the case is thus stated in section 55 of the Restatement of the Law of Restitution: "A person who has con-

ferred a benefit upon another induced thereto by a mistake of law, is entitled to restitution thereof if his mistake was caused by reliance upon a fraudulent misrepresentation of law by the other." A misstatement of a rule of law, made with knowledge of its falsity, "by a lawyer to a layman, or by anyone who has or purports to have expert or superior knowledge and, therefore, is enabled to impose on another, is fraudulent." 5 Williston & Thompson, Contracts, *s.* 1495. And a transfer caused by such a misrepresentation will be rescinded. Restatement, Restitution, *Comment b.* See *Graham* v. *Weber,* 79 N. H. 393, 395; *Maxwell Ice Co.* v. *Company,* 80 N. H. 236, 239. The cases which hold that money voluntarily paid under a mistake of law cannot be recovered (*Harding* v. *Hewes,* 87 N. H. 488, and cases cited) are not in point. In none of those cases was the particular payment obtained by fraud. See *Pearl* v. *Whitehouse,* 52 N. H. 254, 262.

On March 3, 1941, John H. O'Brien of Dover executed in the presence of two witnesses a document (referred to in the findings as petitioners' exhibit number 1) worded as follows: "If I should die before I make a Will give everything to My Wife Teresa O'Brien this is my last wish." John H. O'Brien died on March 10, 1941, leaving no issue. His widow (the defendant Teresa M. O'Brien) and his three sisters, Teresa M. Mullins, Annie B. Hammond, and Julia D. Derby (the plaintiffs in the present proceedings) survived him.

On March 14, 1941, Mrs. O'Brien consulted William H. Sleeper, an attorney, concerning the validity of the exhibit in question. She was accompanied on her visit to Mr. Sleeper by her niece, Catherine McGinn, who lived with her and who had been a witness to the signing of exhibit 1, and the defendant Marion D. Brydia, who was later appointed administratrix of the decedent's estate. Mr. Sleeper advised Mrs. O'Brien that the exhibit was not a valid will, since it lacked the requisite three witnesses. R. L., *c.* 350, *s.* 2. He then prepared the papers necessary to obtain administration of the estate and also drafted a bill of sale of the decedent's personal property, which amounted to $24,000, and a quitclaim deed of his real estate, in which instruments the names of the plaintiffs were inserted as grantors.

On the following morning Mrs. O'Brien invited the plaintiffs to her home. Present on that occasion, besides the plaintiffs and Mrs. O'Brien, were Mr. Sleeper and Catherine McGinn. As a result of this conference the plaintiffs conveyed to Mrs. O'Brien by the bill

of sale and deed (now sought to be set aside) all their respective interests in the estate in consideration of Mrs. O'Brien's promise to pay them the sum of $1,000 each, an amount which, according to the evidence, the decedent had once said he intended to bequeath his sisters when he made a will. This sum was tendered the plaintiffs before the present proceedings were instituted.

Each of the above-mentioned instruments recited the desire of the grantors "to effect the purpose of carrying out" the "wishes" of the decedent "as expressed in the writing" (exhibit 1), "to wit, that Teresa O'Brien, now his widow, have as her own, all of his estate."

There is a sharp conflict in the testimony as to just what was said at the meeting that morning. Both Mrs. O'Brien and Catherine McGinn testified unequivocally that Mr. Sleeper informed the plaintiffs that exhibit 1 was not a valid will, that he fully explained their rights to them, and that they expressed their willingness for Mrs. O'Brien to "have everything." Mr. Sleeper testified to the same effect.

The plaintiffs, on the other hand, declared that Mrs. O'Brien referred to the exhibit as "John's will" and that Mr. Sleeper on being asked pointblank, "Is this a good will?" replied, "That sounds just like him; he was a man of few words." They testified further that Mrs. O'Brien said that the decedent had "left everything" to her; that they understood that she was making them a gift of a thousand dollars each, that she so stated, and that they would not have signed the deed and bill of sale if they had known that exhibit 1 was not a valid will. To the question, "Did Mr. Sleeper sit right there and hear Mrs. O'Brien say to you three sisters that John left everything to her?" the plaintiff Mrs. Mullins answered, "Yes, he did."

The conclusion of the trial Court is as follows:

"Upon consideration of all the evidence, the Court finds that the petitioners are entitled to relief. It is the finding of the Court that the petitioners did not fully understand either the facts or the law in reference to their rights in the estate of the deceased and that they erroneously believed that Petitioners' Exhibit No. 1 was in fact a valid will. This belief and understanding resulted from the misrepresentation of Mrs. O'Brien in her statements that her husband had left her all of his estate by virtue of the document in question. The whole tenor of her conversation was to that effect. She must have known that the document was invalid as a will if other testimony as to the advice given her on the previous night is to be ac-

cepted. With such knowledge her misrepresentations constituted actual fraud and if she failed to comprehend the advice with which she was furnished, her misrepresentations though made under misapprehension and mistake constituted constructive fraud. Her conduct under either situation caused the petitioners to be deceived and misled and resulted in their consenting to a compromise and entering into the agreements from which they now ask to be relieved. The relationship of the parties entitled the petitioners to reliance on statements made to them and it was her duty to exercise good faith.

"Even in the absence of fraud, actual or constructive, the petitioners would be entitled to relief. There was apparently no meeting of minds, Mrs. O'Brien understanding that the petitioners were agreeing to conform to the last wishes of her husband and the petitioners understanding that they had no alternative but to enter into the agreement now in question under the mistaken impression that the document was a valid will.

"While the evidence supports the finding that the legal situation was stated to the petitioners by counsel for the estate, the Court is not convinced that it was sufficiently understood by them to offset or to correct the impression that they were then under as to the lack of right and interest they had in the estate."

There are no facts on which constructive fraud may be predicated. No abuse of confidential or fiduciary relationship is shown (see 23 Am. Jur. 763, 764), and there is no evidence which would warrant a finding that Mrs. O'Brien "failed to comprehend the advice with which she was furnished." She admitted on cross-examination that she knew exhibit 1 was not a good will and that the plaintiffs were entitled to share in the distribution of the estate.

There is sufficient evidence of actual fraud, but there is no express finding that Mr. Sleeper participated therein either actively or passively. On the contrary, the Court declares that "the evidence supports the finding that the legal situation was stated to the petitioners by counsel for the estate." If this means, as we assume it does, that a definite finding to that effect has been made, such a finding is inconsistent with the previous finding of fraud, for there is no evidence that Mr. Sleeper's explanation of the legal situation, if he made one (and the plaintiffs deny that he made any at all), was so ambiguous or so insufficient as to be misunderstood, and reliance on Mrs. O'Brien's misrepresentations could not, under the circumstances, be reasonably inferred.

However, the implication of the above-quoted clause is not alto-

gether certain, and if we are wrong in our assumption that the trial Court has definitely found that Mr. Sleeper informed the plaintiffs of their legal rights, that court, on appropriate motion, will correct the error.    The order is

*Bill dismissed, nisi.*

All concurred.